The fourth case this morning is 21-1295 Merrill v. Pathway Leasing and before we get started again I want to thank Professor Cushy for the work that they do with the students and the program. I think this is at least the third case we've had up since you've taken over the directorship, at least maybe that I've been on. I've been on at least one previously and I just think it's an excellent program and I'm glad that CU Law is able to identify cases and the students have a chance to do the job that they did. The briefs that were prepared were really first rate. I congratulate you on that. I had the opportunity, Mr. Bruin would never admit it, but I was up at the law school the other day and he came up to me. I hope you don't mind if I share this story. He says, I'd like to introduce myself because I'm going to be arguing a case. And I go, oh, are you a lawyer? He says, no, I'm a third year student and I wanted to meet you because I know I'm going to be nervous next week and I just wanted to see what you look like before I look at you on the bench. So I said, if you do a decent moot court or two, you might be a little nervous too, but you'll be prepared. So in any event, welcome to the students. It's a great program. And with that, I think we can start our argument. And I think going first is Ms. Rodriguez, is that correct for the appellant? You may proceed when you're ready. May I please the court? My name is Patricia Rodriguez and I'm here on behalf of the lease drivers. I will address joint employment. My co-counsel will address misclassification. We would like to reserve two minutes for rebuttal. Your honors, when the lower court went through each of the independent contractor factors, it did not actually assume joint employment because it never considered the combined influence of Pathway and XPO. And this is harmful legal error. So let me show you how the lower court didn't consider it. In the degree of permanence factor and whether the lease drivers were an integral part of the pathway to XPO, like putting them on two different sides of an equation instead of on one side and adding them up, which is what a true combined influence analysis would be. When this court says that Pathway could not stay in business without the lease drivers, it just compares that to how integral the lease drivers were to XPO's business. In the degree of permanence factor, it compares the length of the lease agreement with the length of the equipment carrier agreement between XPO and the lease drivers. And again, that's not a combined influence analysis because it doesn't show the whole picture. It puts blinders on the problem. Like, for example, XPO, all these lease drivers were company drivers for XPO before signing on with Pathway. Actually, one of the requirements is to drive for six months for XPO before ever signing on with Pathway. But Mr. Merrill, for example, he drove for 11 years, then signed on with Pathway, and then continued driving for XPO. Did your client make this argument that there needed to be a two-step analysis? In other words, that the district court needed to consider the combined influence of the joint employment before getting to the economic reality test. Yes, so under the joint employment, so what the court should have done is done the joint employment analysis first. But did you advocate to the court this procedural path, and then the court rejected that? No, the lower court did not reject it. We did advocate in the lower courts that this court should adopt HALS-ALENAS, and the court said it would adopt HALS-ALENAS, as this court should. But then when it came time to apply it, it didn't actually apply it because he had to conduct the joint employment analysis first, and then go on to the independent contractor factors. And that's not what happened here. The lower court said it would assume joint employment, but it didn't. Is that in its summary judgment ruling, it agreed that HALS-ALENAS would apply? Yes, that's correct, Your Honor. And because of this, that's what's harmful here because five out of the six independent contractor factors would have actually changed had the lower court actually considered joint employment. And that's both at the first step and at the second step. So let's talk as a threshold matter. Aside from the Fourth Circuit, what other circuits have adopted this HALS-ALENAS joint employer test? Only the Fourth Circuit. Okay. And historically, we've just used the six-factor test here in this circuit and have not considered the impact of a joint employer. Is that right? That's correct. The Tenth Circuit has never adopted a joint employment test. Okay. Are you aware of any to adopt the joint employer test and rejected it? So other circuits that have adopted a joint employment test is under this base case called Bonnet out of the Ninth Circuit, which has four factors. And several circuits have adopted that, but the problem is that that's not very akin to the purpose of the FLSA, and it doesn't look at the right relationship. The Bonnet test looks at the relationship between each of the employers and the employee, while the HALS-ALENAS test for joint employment looks at the relationship between the two entities, the two joint employers, to determine if it's a joint employer. The HALS factors are quite similar, actually, to the economic reality factors. There's a lot of common terminology. Why isn't the better approach just the totality of the circumstances? Obviously, no one factor controls the outcome. It's more of a weighing and kind of integration of all the factors together at the end. So if it's really a totality analysis at the bottom line, you know, why does it matter in what order? Why does it matter that the court assumed joint employment when a lot of the same evidence is what the court was evaluating? Sure. It matters because it never considered a combined lease. So if you think, if you say these two entities are joint employers, then you apply the independent contractor factors as to that joint employer, because under the joint employment doctrine, one entity or two entities may not by themselves rise up to the level of being an employer. But when considered together, it does rise up to that level, which is very similar to what happened in this case. And had the lower court actually conducted that HALS-ALENAS test, it would have seen the interaction between pathway and XPO and how that combinedly exerted a huge degree of control on the lease drivers. What do you think, you know, of the factors, which one do you think would be the most negatively affected by the court's failure to go through HALS-ALENAS? I mean, I think you earlier said five of the six would have been weighed differently, but what's the most prominent or most convincing example of that? Yes, so the degree of control factor goes, is really important here because the pathway and XPO exerted a lot of control. And had the lower court actually considered them combined, it would have looked something like this. When a lease driver signs on with pathway, XPO installs a Qualcomm communications unit, which XPO owns, but the lease drivers use every day in their work. And XPO also installs the trademarks and all the decals that go on the outside of the truck. So to the naked eye, this is an XPO truck. And XPO requires a 10-day notice to be able to switch carriers. But when you add pathway to that, you see that the lease drivers needed permission from pathway to be able to switch carriers. And that permission was only granted if there was a direct payment structure, meaning XPO doesn't pay the lease drivers directly, XPO pays pathway. And then pathway deducts money and pays the lease drivers on a weekly basis. That sounds strongly of an employment relationship, but none of this was considered because the combined influence was never actually employed here. And that's why this joint employment analysis and doing it first is so important. If the court has no additional questions on joint employment, I'd like to hand it over to my co-counsel. All right. Thank you, counsel. Let's hear from Mr. Bruns. My name is Steve Bruns, and I'll argue the misclassification issue. Lower court findings regarding misclassification under the FLSA are to be reviewed for clear error, but there's an important caveat. The lower court's findings cannot rely on legally irrelevant facts, as this court found in Dole v. Snell. Now I'd like to point this court to instances where the lower court relied on legally irrelevant facts. Under the profit or loss factor in Snell, the lower court there clearly erred when it considered earning more by working more to be an opportunity for profit. And the lower court here made the very same mistake. It made much of the fact that the lease drivers could earn a three cent per mile bonus, but earning that bonus, making that bonus, ultimately amounted to that's the second baker factor, the opportunity for profit or loss. And again, under that same profit or loss factor in Snell, the lower court there clearly erred because the workers did not control the essential determinants of profit. And here, it was Pathway, not the lease drivers, who controlled the essential determinants of profit. The lease drivers were in a volume-driven business, and it was Pathway who controlled the volume of their business by limiting the lease drivers to working for just one carrier at a time, and by penalizing lease drivers, they drove too many miles in a given quarter. What about the lease drivers could also work as a team and basically have subcontractors that work for them? That has some of the hallmarks of an independent business relationship. Normally, an employee could not do that. Seems like that cuts in favor of the court's ruling. It does, Your Honor, but that is not dispositive on the issue on the factor of profit or loss. It's not dispositive on the control factor either. It is possible in Real versus Driscoll that 9th Circuit said that an employee could hire a helper without automatically being considered an independent contractor. And this also points to the fact that the inquiry under the FLSA is ultimately concerned with controlling the essential determinants of profit. And so even if a lease driver did work on a team, they still relied on Pathway to a certain extent and XPO or a carrier to get jobs, to drive more miles, to make more money. It wasn't through their own initiative that they could drive more miles. That's true in every trucking relationship, isn't it? If I own a truck, I'm dependent on other companies to make sure I have work. And I'm going to put myself at risk all the time depending on the loads that I take. I mean, some loads are categorically turned down by experienced truckers because they can't make any money hauling them, right? The key difference here, though, is the significant ways that Pathway exerted control over the lease drivers so that they were locked into working for just one carrier at a time. And ideally, an independent contractor who is a trucker would have the opportunity to decline loads, but from multiple carriers at a time rather than just being locked into one carrier as an employee typically would. And on that point, I'd like to take a step back and look at the bigger picture and focus on the control factor, which is arguably the most under the FLSA, again boils down to economic dependence. And Pathway controlled the lease drivers in a way that made them economically dependent on others for the opportunity to work. Pathway controlled who the lease drivers could work for. Lease drivers had to seek Pathway's permission before they could switch to a different carrier. Pathway locked the lease drivers into working for just one carrier at a time. And if a lease driver was indebted, they were not allowed to switch to a different carrier at all. Pathway also controlled the deductions from employees' paychecks. And Pathway did just that by deducting lease payments from the money that the lease drivers earned working for different carriers. And finally, Pathway controlled how much lease drivers could work by assessing that penalty on a quarterly basis if a lease driver drove too many miles. What was the purpose of the penalty provision? The purpose of the penalty provision was to prevent wear and tear on the trucks because Pathway ultimately owned the trucks. So to sort of provide a security against getting a bad truck back even in foreclosure. And some of the drivers were able to eventually purchase their, you know, complete the lease and then own the truck at the end of that period. That's correct, Your Honor. Then did those owner-operators, did they continue with Pathway? Or when they were no longer leasing, they could go off on their own? Or did they still use Pathway as a logistic support? They could go off on their own after completing that lease with Pathway. And this demonstrates the extent to which the lease drivers were under Pathway's control during that lease term because lease drivers testified to the opportunity to work for multiple carriers, not to have their hands tied so much once they were no longer under Pathway's control. So that lease was a means of freedom compared to being under the lease. And if there are no further questions, Your Honors, I'd like to reserve my remaining time for rebuttal. You may, thank you. Thank you. Good morning. May it please the Court, my name is Mark Woletzky and I represent the defendants at the lease. After a seven-day bench trial with multiple witnesses and voluminous evidence, the trial court issued detailed findings of fact supporting its conclusion that the plaintiffs in this case were independent contractors, not employees. Those factual findings are well supported by the record and the Court's legal conclusions are consistent with this Court's well-established precedent. And for that reason, we ask this Court to affirm the trial court's judgment. Counsel, did the district court here skip the very step that it said was critical when it ruled in summary judgment that this joint employment question was a threshold legal question that needed to be resolved? I don't think it skipped it so much as it made an assumption in favor of the plaintiffs. But your adversaries are arguing that it said that, but it didn't actually employ that assumption in its analysis because you can look at the Baker factors and sort of see that that combined influence wasn't accounted for. Right, understood. And respectfully, Your Honor, the findings of fact and conclusions are replete with references to both entities. You can go through the findings of fact and see references to the plaintiff's relationship, not just to Pathway and a Vacuum, and frankly, not just to XBO, but to both. There are references to the role that both Pathway and XBO played with respect to driver's decisions to drive solo versus a team. There are references in the Court's findings of fact to the differences between XBO's relationship with company drivers versus its relationship with owner-operators. But does that satisfy the combined influence analysis? Isn't what we're looking to for joint employment the relationship between the employers? Yeah, I think it does because in this case, Your Honor, you can look at the combined influence, but you still have to separate out the different entities' roles because Pathway, as a leasing company, played no role whatsoever in the plaintiff's hauling of goods. So there's really no way to look at the combined influence there if Pathway is not controlling in any way the dispatch, the loads, the routes, or anything like that. And there was evidence that the Court heard from some of the plaintiffs saying that, well, Pathway did exert some control, and in the Court's findings of facts, it specifically rejected that by noting that, although the plaintiffs may have said that, they also testified over and over again that they got to decide what routes to drive. They weren't subject to forced dispatch. Plaintiff Anthony Dennis had testified that even though he was, quote-unquote, harassed a little bit by Pathway, he still got to choose what routes to the combined influence of the two entities. And in our view, the Court looked at all the right inputs in this case. It just so happens that the findings were not what the plaintiffs wanted, but those findings are obviously entitled to deference under the clear error standard. So we don't believe that the Court in making that assumption committed any error, because it really, it did consider all those differences in the ways in which the two entities interacted alone or separately with these plaintiffs. Are you conceding that the Fourth Circuit's joint employer test applies? We're not challenging it for purposes of this appeal, Your Honor, only because the District Court made that assumption and essentially looked at both entities. And so for purposes of the appeal, we did not challenge that. We did below, but we didn't feel it was necessary to do so on appeal. And we don't believe that this Court actually has to make a determination as to whether Hal Salinas applies or not for that very reason, because the Court made an assumption that essentially favors the plaintiffs in this case and said even if Hal Salinas was the appropriate test. Was the presentation of evidence made with the purpose of trying to establish the joint employer relationship? In other words, one of the fact issues was joint employment at the time of the presentation of the evidence the Court told. And were you told before the presentation of evidence that the Hal Salinas test was going to be deployed by the Court in its analysis? Yes, Your Honor, by virtue of the summary judgment decision. The Court did indicate that there were disputed issues of fact and the test. And again, we obviously objected to that, but everyone knew going in that that was one of the issues at trial. And that's why there was evidence presented and voluminous evidence at that of plaintiffs' relationship with both XPO and pathway leasing. Counsel, do you think that leaving aside Hal Salinas, that the Baker test in our circuit, the economic realities of understanding of these factors accommodates a joint employer inquiry anyway? I think it does, Your Honor, because it does look at the totality of circumstances. And by looking at the totality of circumstances and giving the District Court that discretion to consider that evidence, I think Baker does take that into account. Because ultimately, the Court is charged with looking at the economic reality of the situation. So I think, you know, even if the Court had only looked at Baker, that still accommodates the issue of having two different putative employers at play. In terms of the actual findings of fact on the six Baker factors, as this Court knows, those findings must be reviewed in the likemost favorable to pathway, and any finding must be upheld if it is permissible based on the evidence presented at trial. And in this case, the District Court was obviously in the best position to weigh the evidence, the testimony of witnesses, and the voluminous documents that were submitted by both parties. And ultimately, the District Court did make lengthy and detailed findings as to each of those various factors, both in its findings of fact and then obviously applying those in its conclusions of law. I haven't had any other cases involving, you know, leasing relationships, but Pathways' contract slash lease with these drivers really exhibits a substantial amount of control. And Pathway, of course, had an interest in the wear and tear on their vehicles, as was mentioned. They, you know, had a lot of intrusion onto the miles that could be driven and those sorts of things. And, you know, Pathways' business really wouldn't exist without lease drivers, you know, looking at the fourth or the sixth factor of whether the employees were integral to the business. So it seems to me that just looking at the record, even under clear air standard, there is a lot of control there. Well, Your Honor, with respect to Pathways' control, let me take a few of these and try to address the concerns you raised. In terms of the money and the wear and tear, there certainly was an additional charge to drove over a certain number of miles in a given quarter, but then that would be applied as a credit when the lease was completed. So it's not as if that money would never come back, and it's a depreciating asset. In terms of Pathways' control over day-to-day, the District Court clearly found that Pathway really didn't control the day-to-day, and the control where and how they drove. And they repeatedly testified they got to determine when they took time off, what routes they chose. Many of the plaintiffs didn't want to drive in the northeast or in mountainous regions. They got to decide all that. Pathway had no ability to control that. Pathway had no ability to control whether plaintiffs drove for a particular carrier. For example, it may have been, as Mr. Harris testified, in Pathways' best interest for certain drivers to switch to a different carrier where they knew they could make more money. And that could be in Pathways' best interest. Pathway couldn't force that issue. It had no control to force someone to do that. It couldn't force someone to work more, even if they weren't making enough money to make the lease payments. Pathway can't do that. So, in terms of the actual control, the District Court ultimately concluded that that factor did weigh in favor of contractor status when looking at just the day-to-day operation of plaintiffs operating these vehicles. In terms of the sixth factor, I think you mentioned, the Court ultimately concluded that was a wash and neither side had really presented evidence on that factor either. I thought you conceded that factor at summary judgment. I'm sorry? I thought you conceded that factor at summary judgment. Am I wrong about that? I don't recall, Your Honor, whether we conceded that factor at summary judgment or not. I can only tell you that with respect to the findings of fact and conclusions of law at trial, the Court ultimately concluded it didn't weigh in favor of either party. As we cited in our brief cases of held, even if that factor happened to favor employee status, especially in the long-haul trucker context, the Court still concluded that the plaintiffs were independent contractors. So, in looking at this, ultimately, again, the District Court made this decision looking at the factors, looking at the relationship, and looking at the relationship between the plaintiffs and the plaintiffs. The District Court concluded with respect to five of the factors that they favored, some more strongly than others, but five of the factors favored contractor status. At the end of the day, not only on the control, as I just mentioned, but the ability to hire other drivers as Plaintiff Hollingsworth did, the ability to drive as teams, the ability to income-producing, which seven of the 15 plaintiffs ultimately had when they concluded their lease, distinguishes them from employees. Employees don't get to do that. They also don't have to make that substantial investment in a truck, and it was substantial. Counsel, can I ask you a question about Baker, the fifth Baker factor, about skill? Yes. Didn't the District Court misunderstand that? I mean, the skill is truck driving, right? Not entrepreneurial skill? I don't think so. I think it's both. I mean, I think, number one, truck driving itself is a skill. This Court has recognized that. But number two, in order to successfully operate as an owner-operator, Plaintiff Nassar and the other That's my question. Is it the skill, or is there an overlay of success at your job? I think it's both, because if they can't successfully do the job, they can't do the job. If they didn't know and they couldn't figure out what routes do we have to drive, what loads can we carry that are going to make sense here, how fast do I need to drive in order to make sure this route is going to make sense? Plaintiff Nassar testified you could spend more on fuel in a week than you would earn if you're not careful with this. I think that all does, those are all skills with respect to being able to do the job and do it successfully. Thank you, counsel. Your time has expired. And Nikki, could you give a minute 30 for rebuttal time? Thank you, Your Honors. I'd like to make two brief points on rebuttal. The first is that Baker is not a joint employment test. Can I stop you? Let's get the clock set first. There we go. Okay. No problem at all, Your Honor. Baker is not a joint employment test. It does not explicitly take joint employment into account. And if it does, the lower courts are not aware of that. And that's why the lower court adopted the Hall-Salinas test to find joint employment, but for whatever reason did not actually perform that analysis. The second point I'd like to make is that the Pathway and XPO worked in tandem as joint employers. And one key example of that is the way that Pathway assisted in dispatching. And Pathway would do this if, in the case that a lease driver had fallen behind on their lease payments, they would communicate with XPO or another carrier and ask the carrier to give the lease driver more attention, which, again, certainly looks like something that an employer would be doing and also bears strong relevance on the question of whether XPO and Pathway were joint employers. And in conclusion, Your Honors, that's why we ask that this court remand for a joint employer determination or, in the alternative, simply reverse the lower court and find that the lease drivers were employees of Pathway. Thank you. Thank you, counsel. Cases submitted and counselor excused.